173 P.3d 535

**Richard Todd MOYLE, Plaintiff–Appellant,**

v.

**Y & Y HYUP SHIN CORP., a Hawaii corporation, and TTJJKK Inc., both doing business as Do Re Mi Karaoke, Defendants–Appellees,**

**John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Entities 1–10; and Doe Governmental Units 1–10, Defendants.**

**No. 26582.**

Intermediate Court of Appeals of Hawai'i.

Nov. 8, 2007.

As Corrected March 19, 2008.

at the scene of a crime for failure to obtain assistance from law enforcement or medical personnel[,]" (c) that "[i]ntoxicated liquor consumers may not seek recovery from the establishment which sold them alcohol[,]" and (d) by refusing to give a "mode of operation" instruction; (3) the circuit court erred by including two improper questions in the special verdict form it submitted to the jury; and (4) that the circuit court abused its discretion by denying Appellant's Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) motion.

## I. BACKGROUND

Some time after 4:00 a.m. on September 19, 1999, Richard Todd Moyle (Moyle) arrived at the Do Re Mi Club by taxi. Prior to arriving at Do Re Mi, Moyle had spent several hours at another bar.

At around 6:00 a.m., after about two hours of drinking and socializing, Moyle decided to leave Do Re Mi. On his way out the back door, Moyle was assaulted and robbed by Simi Tupuola (Tupuola), causing Moyle to sustain several injuries.

On September 19, 2001, Moyle initiated the underlying suit by filing a complaint against Appellees, as owners of Do Re Mi, in the circuit court. In the complaint, Moyle alleged, in pertinent part, that Appellees had negligently failed to provide adequate security at Do Re Mi, and that they had negligently failed to protect the health and safety of their patrons.

A jury trial began on February 11, 2004. At the conclusion of the trial, Moyle raised several objections to the jury instructions, including what Moyle argued was the absence of an instruction clearly defining foreseeability. The circuit court overruled Moyle's objections and gave the jury instructions without any further explanation of foreseeability.

The jury rendered a verdict in favor of Appellees, and the circuit court entered judg-

Gary Victor Dubin, on the briefs, Honolulu, for plaintiff-appellant.

Roy F. Hughes and Steven T. Brittain, (Hughes & Taosaka) on the briefs, Honolulu, for defendants-appellees.

WATANABE, Presiding Judge, FOLEY and FUJISE, JJ.

Opinion of the Court by FUJISE, J.

Plaintiff–Appellant Roger Scott Moyle (Appellant)[1] appeals from the final judgment entered March 5, 2004, in the Circuit Court of the First Circuit (circuit court).[2] The circuit court entered final judgment pursuant to the jury verdict rendered in favor of Defendants–Appellees Y & Y Hyup Shin, Corp., (Y & Y) and TTJJKK Inc. (TTJJKK) (collectively Appellees), both of whom were doing business as Do Re Mi Karaoke (Do Re Mi). In bringing this appeal, Appellant argues: (1) the circuit court abused its discretion by excluding a set of nine police reports (police reports); (2) the circuit court improperly instructed the jury (a) that under ordinary circumstances "criminal acts are not reasonably to be expected," (b) that "[t]here can be no liability for civil damages against a person

1. By motion and order dated December 20, 2004, Roger Scott Moyle (Appellant), brother to Plaintiff–Appellant Richard Todd Moyle (Moyle), was substituted for Moyle who died on August 31, 2004. Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(a).

2. The Honorable Victoria S. Marks presided.

ment on March 5, 2004. Moyle timely filed his notice of appeal on May 19, 2004.

## II. STANDARDS OF REVIEW

### A. Admissibility of Evidence

[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*State v. West*, 95 Hawai'i 452, 456–57, 24 P.3d 648, 652–53 (2001) (quoting *Kealoha v. County of Hawaii*, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993)).

### B. Jury Instructions

Once the parties have presented all their evidence, "it becomes the court's fundamental duty to properly instruct the jury on the law on the precise issues of fact it is to decide." *Montalvo v. Lapez*, 77 Hawai'i 282, 291, 884 P.2d 345, 354 (1994). The trial court bears this duty because it is "the sole source of all definitions and statements of law" and as such, it is the trial court's responsibility to "see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide[.]" *Id.* at 291 n. 13, 884 P.2d at 354 n. 13 (internal quotation marks and citations omitted).

To effect this end, the court utilizes jury instructions, the purpose of which is "to inform the jury of its function, which is the independent determination of the facts, and the application of the law, as given by the court, to the facts found by the jury." *Lee v. Elbaum*, 77 Hawai'i 446, 457, 887 P.2d 656, 667 (App.1993) (internal quotation marks and citation omitted). Jury instructions should be a "concise statement of the claims of the parties, the issues of fact that the jury must decide, and the applicable law." *Id.*

When jury instructions are reviewed by this court, the standard of review is whether, "when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 297, 141 P.3d 459, 470 (2006) (internal quotation marks and citations omitted). Generally, instructions that are found to be an erroneous articulation of the law raise a presumption that they were harmful. *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978). The presumption can be overcome however, if it "affirmatively appears from the record as a whole that the error was not prejudicial." *Id.*

In crafting the applicable jury instructions, the trial judge's discretion is bounded by the "obligation to give sufficient instructions and the opposing imperative against cumulative instructions." *Tittle v. Hurlbutt*, 53 Haw. 526, 530, 497 P.2d 1354, 1357 (1972). Refusing to give an instruction relevant under the evidence which correctly states the law is an error if the point has not been adequately and fully covered by other instructions. *Sherry v. Asing*, 56 Haw. 135, 144, 531 P.2d 648, 655 (1975) (citations omitted).

### C. Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous

words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.["] Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning."

*Lingle v. Hawaii Gov't Employees Ass'n, AFSCME, Local 152, AFL–CIO*, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (quoting *Guth v. Freeland*, 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–85 (2001)) (some brackets added).

### D. Special Verdict Forms

■ In deciding whether to use a special or general verdict form, the trial court is vested with "complete discretion." *Montalvo*, 77 Hawai'i at 292, 884 P.2d at 355. Additionally, the "form of the verdict[,] as well as the interrogatories submitted to the jury[,]" are left entirely to the discretion of the court, "'provided that the questions asked are adequate to obtain a jury determination of all factual issues essential to judgment.'" *Id.* (quoting *In re Hawaii Fed. Asbestos Cases*, 871 F.2d 891, 894 (9th Cir.1989)); *see also* HRCP Rule 49(a). Despite this wide discretion, it is still possible that the contents of the form "may be so defective that they constitute reversible error." *Montalvo*, 77 Hawai'i at 292, 884 P.2d at 355. When analyzing special verdict forms on appeal, "the instructions and the interrogatories on the verdict form are considered as a whole." *Id.*

### E. HRCP Rule 60(b)(3) Motions

The circuit court's disposition of Appellant's HRCP Rule 60(b)(3) motion is reviewed for abuse of discretion. *Beneficial Hawaii, Inc. v. Casey*, 98 Hawai'i 159, 164, 45 P.3d 359, 364 (2002). The trial court abuses its discretion if it has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.; see*

*also State v. Akina*, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992).

## III. DISCUSSION

### A. Exclusion of Police Reports

■ Appellant argues that the circuit court erred by excluding the police reports. In making this argument, Appellant contends that, contrary to the circuit court's reasoning, it was not necessary to lay a foundation for the police reports as a prerequisite for their use in impeaching a witness's prior testimony. We disagree.

As explained by the circuit court in making its ruling, the police reports were inadmissible because: (1) a proper foundation had not been laid, (2) they had been obtained after the discovery cutoff date, (3) they violated the circuit court's pretrial order that all evidence be marked and submitted to the court, and (4) they were unfairly prejudicial and would cause undue delay pursuant to Hawaii Rules of Evidence (HRE) Rule 403. Although Appellant contests the first basis, he does not contest the second, third or fourth reasons given by the circuit court for finding the police reports inadmissible.

■ Notwithstanding a party's right to appeal, generally there is a presumption that a judgment by a trial court is valid. *Stafford v. Dickison*, 46 Haw. 52, 62, 374 P.2d 665, 671 (1962). Moreover, appellant bears the burden of demonstrating his "allegations of error against the presumption of correctness and regularity that attend the decision of the lower court." *Ala Moana Boat Owners' Ass'n v. State*, 50 Haw. 156, 158, 434 P.2d 516, 518 (1967). Where an appealing party fails to raise and argue a point of error, the point may be deemed waived by the reviewing court. Hawai'i Rules of Appellate Procedure Rule 28(b)(7) (2000). Thus, where alternative bases given by the lower court for a contested decision are left unaddressed by an appealing party, the appealing party has failed to demonstrate the existence of an error.

Even assuming, arguendo, Appellant is correct in his argument that he was not required to lay a foundation for the police

reports, by failing to address all of the alternative bases given by the circuit court for the exclusion of the police reports, he has failed to demonstrate the existence of error. Thus, Appellant has failed to show the circuit court abused its discretion by excluding the police reports.

### B. Jury Instructions

The circuit court's instructions to the jury on negligence, in pertinent part, were:

Negligence is doing something which a reasonable person would not do or failing to do something which a reasonable person would do. It is the failure to use that care which a reasonable person would use to avoid injury to himself, herself, or other people or damage to property.

In deciding whether a person was negligent, you must consider what was done or not done under the circumstances as shown by the evidence in this case.

In determining whether a person was negligent, it may help to ask whether a reasonable person in the same situation would have foreseen or anticipated that injury or damage could result from that person's action or inaction. If such a result would be foreseeable by a reasonable person and if the conduct reasonably could be avoided, then not to avoid it would be negligence.

Business establishments that hold themselves open to the public, such as proprietors of bars and taverns and clubs where liquor is allowed or known to be on the premises, owe their customers a specific duty to exercise reasonable care to protect them from foreseeable injury at the hands of other patrons.

A landholder only has a duty to protect against criminal acts of third persons if such acts are reasonably foreseeable.

Under ordinary circumstances, criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risks.

There can be no liability for civil damages against a person at the scene of a crime for failure to obtain assistance from law enforcement or medical personnel. Therefore you may not find in favor of the plaintiff and against either or both defendants in this case even if you find that one or both defendants failed to obtain assistance. A person cannot be sued for failure to summon assistance under Hawaii law.[3]

Intoxicated liquor consumers may not seek recovery from the establishment which sold them alcohol; they are solely responsible for their own voluntary intoxication.

In the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises does not constitute actionable negligence.

(Footnote added.)

Appellant argues that the instructions, as read to the jury, were prejudicially insufficient and erroneous for three reasons. First, he argues that the circuit court erred in instructing the jury that under ordinary circumstances "criminal acts are not reasonably to be expected[.]" According to Appellant, this language was contradictory and misleading when viewed in the context of the other instructions explaining "foreseeability." Second, Appellant contends that the instruction that "[t]here can be no liability for civil damages against a person at the scene of a crime for failure to obtain assistance from law enforcement or medical personnel[,]" is a misstatement of the law. Third, Appellant argues that the instruction that "[i]ntoxicated liquor consumers may not seek recovery from the establishment which sold them alcohol" was unwarranted by the evidence in the case and that it only served to further mislead and confuse the jury regarding foreseeability.

Appellant also argues that the circuit court erred when it failed to give his proposed instruction on mode of operation based on the holding in *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 417, 5 P.3d 407 (2000) (*Gump II*).

---

**3.** This instruction is the subject of Appellant's third point on appeal, discussed *infra*.

## 1. Instructions Regarding Foreseeability

In challenging both the "criminal acts are not reasonably to be expected" instruction and the "intoxicated liquor consumers" instruction, Appellant contends that the court misinstructed the jury on the law regarding foreseeability of "criminal acts" and the need for security. Because jury instructions are considered holistically when reviewed for error and because both of these points concern the concept of foreseeability, they will be considered together. However, before reaching the substantive merits of these arguments, we must examine whether Appellant successfully preserved this point of error for appeal. *See Kawamoto v. Yasutake,* 49 Haw. 42, 45, 410 P.2d 976, 978 (1966).

As explained in *Kealoha v. Tanaka,* 45 Haw. 457, 461–62, 370 P.2d 468, 471 (1962), a party who invites error in the trial court waives the right to have the error considered on appeal. The simple rationale for this doctrine is that a party should be prevented from profiting from an error that the party induced. *State v. Logan,* 200 Ariz. 564, 566, 30 P.3d 631, 633 (2001). As such, a party may not, on appeal, question any error of the trial court brought about by his or her invitation, except as to plain error or errors that are jurisdictional. *Montalvo,* 77 Hawai'i at 290, 884 P.2d at 353; *James W. Glover, Ltd. v. Fong,* 42 Haw. 560, 568 (1958).

With respect to jury instructions in civil cases, the invited error doctrine applies with "full force and effect." *Kealoha,* 45 Haw. at 462, 370 P.2d at 471. "Whereas in criminal cases a court has strong sua sponte duties to instruct the jury on a wide variety of subjects, a court in a civil case has no parallel responsibilities." *Mayes v. Bryan,* 139 Cal.App.4th 1075, 1090, 44 Cal. Rptr.3d 14, 23 (Cal.Ct.App.2006) (quoting *Stevens v. Owens–Corning Fiberglas Corp.,* 49 Cal.App.4th 1645, 1653, 57 Cal.Rptr.2d 525, 530 (1996)) (internal quotation marks omitted). As litigants in civil suits must propose complete instructions in accordance with their theory of the litigation, the trial court is not "obligated to seek out theories a party might have advanced, or to articulate for him [or her] that which he [or she] has left unspoken." *Id.* (internal quotation marks and original brackets omitted).

Generally, invited error arises with respect to jury instructions where the party appealing the contents of the instruction was the party responsible for the objectionable content. *See Mayes,* 139 Cal.App.4th at 1089, 44 Cal.Rptr.3d at 22; *see also Montalvo,* 77 Hawai'i at 290–91, 884 P.2d at 353–54. Invited error also arises where the party bringing the appeal merely agreed to the portion of the instruction being contested. *In re Mew Len Ching's Estate,* 46 Haw. 127, 129–30, 376 P.2d 125, 127 (1962).

Moreover, invited error can arise where the appealing party's conduct resulted in the absence of an instruction. *Montalvo,* 77 Hawai'i at 290, 884 P.2d at 353. In *Montalvo,* an instruction that accurately defined legal cause was withdrawn in favor of an instruction containing an incorrect statement of the law that was properly rejected by the trial court. *Id.* Even though the Hawai'i Supreme Court ultimately reversed the trial court's failure to substitute a correct instruction on the subject due to plain error, it noted that the appealing party had "essentially waived the error on appeal." *Id.*

The present case involves a novel permutation on the facts found in *Montalvo.* Here, immediately prior to trial, Appellant submitted a set of proposed jury instructions which included an instruction taken from *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 117, 899 P.2d 393, 400 (1995) (Maguire Instruction). The Maguire Instruction proposed a definition of foreseeability regarding third party criminal acts on or near a business establishment.[4] During the settlement of in-

---

4. The instruction which Appellant submitted based on *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 117, 899 P.2d 393, 400 (1995) read:
 The previous occurrence of similar criminal acts on or near a business' [sic] premises is a circumstance to consider, but the question of foreseeability is not conclusively answered in

favor of the business establishment if there has been no prior similar criminal act or acts.
 Foreseeability in such situations is determined in light of the totality of the circumstances rather than by a rigid mechanical application of a "prior similar incident" rule.

structions, Appellant withdrew the Maguire Instruction, but, unlike the party in *Montalvo*, Appellant did not proffer a surrogate instruction. Immediately thereafter, Appellant raised the objections to several of Appellees' proposed instructions, which form the basis of this appeal, arguing that the instructions failed to provide a definition of foreseeability consonant with *Maguire* and that their cumulative effect was to misdirect the jury's inquiry into irrelevant issues.

Given these facts, the issue is whether a party may, on appeal, object to the absence of a clear instruction regarding foreseeability, where it is clear from the record that the party chose not to include an instruction on that issue. We hold that the invited-error doctrine prevents Appellant from complaining on appeal about the absence of an instruction that he elected to withdraw at trial. To hold otherwise would encourage litigants to proffer instructions which are later withdrawn in a bid to preserve error for appeal in the event of an unfavorable verdict.

■■■■ Despite the existence of invited error, Appellant's challenge to the jury instructions on foreseeability may still be reached if the error is plain. *Montalvo*, 77 Hawai'i at 291, 304, 884 P.2d at 354, 367 ("plain error doctrine represents a departure from the normal rules of waiver that govern appellate review"). Even where a party has waived raising the error on appeal, an appellate court is not prevented from "taking cognizance of the trial court's error if the error is plain and may result in a miscarriage of justice." *Turner*, 59 Haw. at 324, 582 P.2d at 714 (citations omitted). Thus, in *Montalvo*, the Hawai'i Supreme Court chose to consider the correctness of instructions resulting from a party's submission and withdrawal of a correct instruction and subsequent attempt, by the same party, to substitute an incorrect instruction. *Montalvo*, 77 Hawai'i at 291, 884 P.2d at 354.

■■■ Under plain error review, the discretion of this court may be exercised to consider improperly preserved issues, like those present in the instant appeal, where three elements are met: (1) consideration of the issue does not involve additional questions of fact; (2) the issue does not go to the integrity of the fact-finding process; and (3) the issue involves questions of great public import. *Fujioka v. Kam*, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973) (citations omitted); *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 476, 540 P.2d 978, 985 (1975); *Montalvo*, 77 Hawai'i at 290, 884 P.2d at 353.

The first element is based on the maxim that an issue based upon an undeveloped factual record should not be reviewed. *Montalvo*, 77 Hawai'i at 290–91, 884 P.2d at 353–54 (citing *In re Hawaiian Land Co.*, 53 Haw. 45, 53, 487 P.2d 1070, 1076 (1971)). As in *Montalvo*, the facts in the record here clearly and sufficiently raise the issue of whether Moyle's assault was foreseeable.

However, the issue to be evaluated under the second element differs from the issue in *Montalvo*. As discussed above, "[o]nce all the evidence has been presented, it becomes the court's fundamental duty to properly instruct the jury on the law on the precise issues of fact it is to decide." *Montalvo*, 77 Hawai'i at 291, 884 P.2d at 354. Because the jury is the finder of fact, it follows that a failure to properly instruct the jury affects the integrity of the jury's findings. *Id.* In *Montalvo* the court held that the failure to clearly define "legal cause" to the jury, "a concept foreign to most non-lawyers" amounted to improper instruction of the jury. *Id.* Here, however, the concept at issue is "foreseeability" and is not shrouded in the same nuance and complexity that "legal causation" is.

■■■■ "Foreseeability" arises from the concept of duty central to negligence. As a prerequisite to all negligence actions, a duty, owed by defendant to the plaintiff, must be demonstrated. *Cuba v. Fernandez*, 71 Haw. 627, 631, 801 P.2d 1208, 1211 (1990). A duty arises where "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of a plaintiff who has suffered invasion is entitled to legal protection at the expense of a defendant[.]" *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 353, 944 P.2d 1279, 1296 (1997) (citation omitted).

The existence of a duty is not, itself, dispositive of liability, but an expression of those considerations of policy which establish that a particular plaintiff is entitled to protection from a particular harm. *Blair v. Ing*, 95 Hawai'i 247, 259, 21 P.3d 452, 464 (2001). Determining whether a duty is owed must be decided on a case-by-case basis and involves weighing the considerations of policy which favor recovery for the harm against those which favor limiting liability. *Id.* at 260, 21 P.3d at 465. This analysis generally involves considering several factors to determine whether a special relationship exists:

the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* (quoting *Lee v. Corregedore*, 83 Hawai'i 154, 164, 925 P.2d 324, 334 (1996)); *see also Pulawa v. GTE Hawaiian Tel*, 112 Hawai'i 3, 12, 143 P.3d 1205, 1214 (2006).

Ordinarily, the existence of a duty is a question of law. *Pulawa*, 112 Hawai'i at 11–12, 143 P.3d at 1213–14; *McKenzie v. Hawaii Permanente Med. Group, Inc.*, 98 Hawai'i 296, 298, 47 P.3d 1209, 1211 (2002). However, where reasonable foreseeability of injury is involved, it usually becomes a question for the trier of fact. *Maguire*, 79 Hawai'i at 117, 899 P.2d at 400. Indeed, "foreseeability is only a question of law when reasonable minds cannot differ" as to the conclusion drawn. *Id.* at 117 n. 9, 899 P.2d at 400 n. 9.

With respect to the criminal acts of third parties, Hawai'i courts have taken the view that under ordinary circumstances, criminal acts are "so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risk." *Doe v. Grosvenor Props. (Hawaii) Ltd.*, 73 Haw. 158, 162, 829 P.2d 512, 515 (1992). Although courts have historically been reluctant to impose a duty on the possessors of land to protect others against the criminal acts of third parties, this reluctance gives way where a special relationship exists between parties, for example, where the injured party was a "business visitor." *Id.* at 163–64, 829 P.2d at 515–16; *see also Maguire*, 79 Hawai'i at 113, 899 P.2d at 396.

"[A] person who is invited to enter or remain on land for a purpose directly or indirectly connected [to] business dealings with the possessor of the land" is a "business visitor." *Maguire*, 79 Hawai'i at 113, 899 P.2d at 396. As explained in *Maguire*, a duty of affirmative care, "including the duty to protect, is imposed [on a possessor of land] as the price the landholder must pay for the economic benefit derived from [business] visitors." *Id.* (internal quotation marks omitted) (quoting *Doe*, 73 Haw. at 164 n. 1, 829 P.2d at 516 n. 1). In the instant case, it is undisputed that Appellees owned and ran the Do Ri Me Club for profit. Moreover, it is undisputed that Appellant was at the club to participate, as a paying customer, in the activities being hosted by Appellees. As such, the requisite business visitor relationship arose, and the duties imposed by it were implicated.

Despite the existence of a special relationship, the possessor of land "is not an insurer of the visitor's safety" and is "ordinarily under no duty to exercise any care until he or she knows or has reason to know that the acts of the third person are occurring, or about to occur." *Maguire*, 79 Hawai'i at 113–14, 899 P.2d at 396–97 (internal brackets and citations omitted). Thus, to gauge whether or not a possessor of land owes a duty to a business visitor to take reasonable steps to protect against the criminal acts of a third party, the criminal acts must have been foreseeable. *Id.* at 114, 899 P.2d at 397.

In determining the foreseeability of a particular criminal act committed by a third party, the Hawai'i Supreme Court embraced the analysis articulated by the Intermediate Court of Appeals (ICA) in *Moody v. Cawdrey & Assocs., Inc.*, 6 Haw.App. 355, 364–65, 721

P.2d 708, 715, *rev'd on other grounds*, 68 Haw. 527, 721 P.2d 707 (1986). *Maguire*, 79 Hawai'i at 116, 899 P.2d at 399. In *Moody*, the ICA explained that while evidence of prior similar incidents was probative, it was "not the *sine qua non* to a finding of foreseeability." *Id.* (quoting *Moody*, 6 Haw.App. at 364–65, 721 P.2d at 715). Conversely, the absence of proof of prior similar incidents does not foreclose a finding of foreseeability. Rather, the touchstone for determining foreseeability is a totality-of-the-circumstances analysis: foreseeability must be analyzed in light of all the circumstances on a case-by-case basis. *Maguire*, 79 Hawai'i at 116–17, 899 P.2d at 399–400; *see Doe*, 73 Haw. at 168, 829 P.2d at 517; *see also Moody*, 6 Haw.App. at 364–65, 721 P.2d at 715.

▮▮▮ Thus, if the nature, condition, character or location of the defendant's premises is such that he or she should reasonably anticipate criminal conduct on the part of third persons, either generally or at some particular time, the defendant may be obligated to take precautions against such conduct. *Doe*, 73 Haw. at 165–66, 829 P.2d at 516 (quoting Restatement (Second) of Torts § 344 cmt. f (1965)); *Maguire*, 79 Hawai'i at 113–14, 899 P.2d at 396–97. Alternatively, a possessor of land may also be obligated to take precautions where the possessor knows or has reason to know from past experience "that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he or she has no reason to expect it on the part of any particular individual." *Maguire*, 79 Hawai'i at 114, 899 P.2d at 397 (internal brackets omitted). Ultimately, "[w]hat is required to be foreseeable is the general character of the event or harm [and] not its precise nature or manner of occurrence." *Moody*, 6 Haw. App. at 365, 721 P.2d at 715 (internal quotation marks and citation omitted).

When read as a whole, the instructions in this case do not reveal a defect with respect to foreseeability rising to plain error. Though the instructions did not expressly instruct the jury to evaluate foreseeability in light of the totality of the circumstances, this omission is not fatal to the instructions. "Foreseeable" is defined as "being such as may be reasonably anticipated[.]" *Merriam–Webster's Collegiate Dictionary* 490 (11th ed.2003). The term, at its core, is intuitive and understandable by most non-lawyers and implies consideration of all the attending circumstances. Indeed, the totality-of-the-circumstances test was adopted in an effort to free foreseeability of counterintuitive and restrictive restraints imposed by the prior-similar-incidents rule. *Moody*, 6 Haw.App. at 364–65, 721 P.2d at 715. As such, though the presentation and explanation of foreseeability may have been imperfect, it does not implicate the integrity of the jury's findings.

Consequently, because this issue does not go to the integrity of the fact-finding process, the error in this case is not plain. Moreover, because the second element has not been met, we do not reach the third element. As such, we decline to review this invited error.

### 2. Instructions Regarding Bystander's Duty to Assist

Appellant argues that the jury instruction explaining a bystander's duty to assist was deficient for two reasons: first, it was based on a misreading of Hawaii Revised Statutes (HRS) § 663–1.6 (1993), as the language of HRS § 663–1.6(c) should be read to mean liability arises if the failure to provide assistance was unreasonable. Second, the instruction itself misdirected the jury to matters that were not before them for consideration.[5]

---

5. Both of Appellant's arguments lack any authority to support the underlying contentions being made. According to HRAP 28(b)(7), the argument in Appellant's opening brief shall contain "the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." *See Citicorp Mortgage, Inc. v. Bartolome*, 94 Hawai'i 422, 433, 16 P.3d 827, 838 (2000) ("An appellate court does not have to address matters for which the appellant has failed to present discernible argument.") However, in light of our policy to hear cases on the merits where possible we will exercise our discretion to consider the merits of his arguments. *See O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994).

■ HRS § 663–1.6(c) states that "[a]ny person who fails to provide reasonable assistance in compliance with subsection (a) shall not be liable for any civil damages." Subsection (a) provides, in pertinent part, that "[a]ny person at the scene of a crime who knows that a victim of the crime is suffering from serious physical harm shall obtain or attempt to obtain aid from law enforcement or medical personnel if the person can do so without danger or peril to any person." Reading this language in the context of the entire statute and construing it in a manner consistent with its purpose does not lead to Appellant's construction. As is clear from the plain language of this provision, the word "reasonable" modifies "assistance" and not "fails to provide[.]" HRS § 663–1.6(c). Consequently, the language of the statute clearly establishes that the failure to render reasonable assistance will not be a basis for civil liability.

■ As for Appellant's contention that the instruction misled the jury, this argument also has no merit. As adduced during trial, in large part due to Appellant's questioning, the individuals who had been working at the Do Re Mi Club elected not to call the police or medical assistance upon becoming aware of the ongoing assault against Appellant. Premises liability, and liability of an individual bystander for failure to act, are two separate issues, and this instruction effectively and appropriately explained to the jury that civil liability cannot be based on the latter.

### 3. Failure to Give Proposed Instruction

■ Appellant argues that the court erred when it failed to give his proposed instruction based on the holding in *Gump* II. Specifically, Appellant contends that the jury should have been instructed that,

> [w]here a business establishment adopts a marketing plan or mode of operation in which a dangerous condition is reasonably foreseeable and it fails to take reasonable steps to discover and remove or lessen the dangerous condition, customers who are injured as a result of that dangerous condition may recover their damages without being required to prove that the business

establishment had any actual or constructive knowledge of the specific instrumentality causing the injuries.

Appellant's contention is without merit. The proffered instruction was, at a minimum, inapplicable under the facts of the case as established during trial.

■ As discussed above, to the extent that premises liability extends to the foreseeable criminal acts of third persons, it only does so where the injured person is a business visitor and under the totality of the circumstances, the criminal acts were reasonably foreseeable. The excluded instruction proposed a mode of operation instruction which establishes liability for a company whose mode of operation creates the risk of harm. *Gump* II, 93 Hawai'i at 420, 5 P.3d at 410. The risk of being injured by a third party's criminal act is not created by the mode of operation of a business. Rather, the risk of being injured by a third party's criminal act may create a duty for the business to modify its mode of operation to guard against it.

### C. Special Verdict Form

■ Appellant next argues that the special verdict form contained two incorrect questions, asking the jury to determine who was responsible for Appellant's injuries and to assign a percentage of liability to each responsible party. Tupuola, who, on May 18, 2000, was convicted for the robbery causing the injuries suffered by Moyle and who was not a party to this action, was listed in both questions. According to Appellant, the court erred by including a non-party's name in the special verdict form.

Appellant contends that, according to *Gump*, "although placing nonparties on the special verdict form is a matter within the discretion of the trial court, it is an abuse of discretion to do so where the defendant inordinately delays naming the nonparty as an additional party for tactical reasons and thereby assumes the risk of non-inclusion, waiving his right to do so." *See Gump v. Wal-Mart Stores, Inc.*, 93 Hawai'i 428, 447, 5 P.3d 418, 437 (1999) (*Gump* I), *rev'd on other grounds*, 93 Hawai'i 417, 5 P.3d 407 (2000).

Support for Appellant's contention does not exist in the ICA's discussion in *Gump* I.

██ ▪ The ICA noted, and the Hawai'i Supreme Court affirmed the ICA on this point, that the decision to exclude a non-party joint tortfeasor from a liability apportionment question on a special verdict form is within the discretion of the trial court. *Gump* I, 93 Hawai'i at 447, 5 P.3d at 437, *aff'd*, 93 Hawai'i at 423, 5 P.3d at 413. By implication, a trial court also has discretion to include a nonparty on a special verdict form. *See Gump* II, 93 Hawai'i at 422, 5 P.3d at 412.

██ In any event, HRS § 663–11 (1993) defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." As explained by the ICA, and affirmed by the Hawai'i Supreme Court on this point, joint tortfeasors "are jointly and severally liable for the injury they caused to an injured party ... and the injured party is entitled to collect his or her entire damages from *either tortfeasor*." *Gump* I, 93 Hawai'i at 446, 5 P.3d at 436, *aff'd* 93 Hawai'i at 423, 5 P.3d at 413 (quoting *Karasawa v. TIG Ins. Co.*, 88 Hawai'i 77, 81, 961 P.2d 1171, 1175 (App.1998)). In this connection, "liable" means "subject to suit" or "liable in a court of law or equity." *Tamashiro v. De Gama*, 51 Haw. 74, 75, 450 P.2d 998, 1000 (1969). Implicit in these definitions is the notion that party status is not a prerequisite to joint tortfeasor status. *See Gump* II, 93 Hawai'i at 422, 5 P.3d at 412.

██ Both the ICA and the Hawai'i Supreme Court concluded in *Gump* that it is within the trial court's discretion to exclude nonparties on a special verdict form for the apportionment of fault. *Gump* I, 93 Hawai'i at 447, 5 P.3d at 437, *aff'd*, 93 Hawai'i at 422, 5 P.3d at 412. Consistent with the above definitions, courts are not limited to apportioning fault only among parties to a lawsuit. *Id.* In acknowledging authority cited by Wal-Mart which included nonparties on special verdict forms "because it precluded prejudice to otherwise vigilant parties[,]" the court immediately qualified this, stating "[c]ertainly nothing in either case mandates inclusion

simply because a party has failed to protect its rights[.]" *Id.*

██ Consonant with the reasoning in *Gump* I, the converse of the ICA's holding should also be true: exclusion is not mandated simply because a party has failed to protect its rights. Thus, "if the injured [party] could have recovered damages in a direct action against [another tortfeasor], had the injured person chosen to pursue such an action[,]" then that tortfeasor is a joint tortfeasor and it is within the trial court's discretion to either include or exclude the nonparty tortfeasor's name from a special verdict form apportioning liability. *See Gump* II, 93 Hawai'i at 422, 5 P.3d at 412 (quoting *Velazquez v. Nat'l Presto Indus.*, 884 F.2d 492, 495 (9th Cir.1989)).

In the instant litigation, there is no question that Appellant could have pursued an action for his injuries against Tupuola if Appellant had chosen to. That Appellant elected not to, and that Appellee unsuccessfully attempted to file a cross-claim against Tupuola, do not compel overriding the circuit court's exercise of discretion to include Tupuola on the special verdict form.

### D. HRCP Rule 60(b)

██ Finally, Appellant challenges the circuit court's denial of his March 15, 2004 "Rule 59(a), Rule 59(e), and Rule 60(b)(3) HRCP Motion to Set Aside Jury Verdict and Judgment Entered March 5, 2004, and for a New Trial, and For Sanctions, Based Upon Defendants' Fraud Upon the Court and Erroneous Jury Instructions and Prejudicial Verdict Form[.]" While the title of the motion appears to implicate at least three grounds, Appellant only reasserts one on appeal, namely, that Appellees and their representatives committed perjury and fraud on the court while giving testimony on a material factual issue: who owned the club at the time the incident occurred.

██ HRCP 60(b), and Federal Rules of Civil Procedure (FRCP) Rule 60(b), upon which HRCP 60(b) is based, share identical language. Hawai'i courts view case authority construing similar provisions of the federal rules as "highly persuasive" in interpreting

our own rules of civil procedure. *Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968). The federal courts "[have] long recognized the inherent equity power of courts to set aside a judgment whenever its enforcement would be 'manifestly unconscionable' because of 'fraud upon the court.'" *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 130 (4th Cir.2000) (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244–45, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). However, the federal courts have construed "fraud upon the court" narrowly. *Id.*

 As explained in *In re Genesys Data Techs., Inc.*, "[b]ecause the power to vacate a judgment for fraud upon the court is so free from procedural limitations, it is limited to fraud that 'seriously' affects the integrity of the normal process of adjudication[.]" *In re Genesys Data Techs., Inc.*, 204 F.3d at 130 (internal quotation marks and citation omitted). The examples given by the court in *In re Genesys Data Techs., Inc.*, of this narrowly defined concept include "fraud by bribing a judge, or tampering with a jury, or fraud by an officer of the court, including an attorney." *Id.* (citation omitted). Fraud between parties "however is not fraud on the court even if it involves perjury by a party or witness." *Id.* (internal quotation marks and internal brackets omitted) (citing numerous other examples). Hawai'i case law does not appear to deviate from the federal standard.[6]

 Applying this standard to the instant case, we note that Appellant has failed to raise any arguments or offer any evidence that indicate fraud on the court has occurred. Even assuming that Appellees or their agents had made material misrepresentations in their testimony, without more, this would not constitute fraud within the meaning of HRCP Rule 60(b)(3).

Moreover, the evidence proffered does not support Appellant's contention that Son testified TTJJKK had no ownership interest in the club at the time the complained-of events occurred. Conversely, nothing in the evidence Appellant presented in support of his motion establishes that TTJJKK had an own-

ership interest in the club at the time the injury occurred. Furthermore, Appellant has not shown how ownership of the club, by either Y & Y or TTJJKK affected the outcome of his case. As such, the circuit court was well within its discretion to deny Appellant's HRCP 60(b)(3) motion.

## IV. CONCLUSION

Based on the foregoing, we affirm the Final Judgment entered by the Circuit Court of the First Circuit on March 5, 2004.

---

6. *See In re Genesys Data Techs., Inc.* 204 F.3d 124, 131 (4th Cir.2000) for a discussion of the Hawai'i cases *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 948 P.2d 1055 (1997) and *Southwest Slopes, Inc. v. Lum*, 81 Hawai'i 501, 918 P.2d 1157 (App.1996).